IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| William Finley, III,<br><br>Plaintiff,<br><br>v.<br><br>3M Company, *a Delaware Corporation*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:24-cv-01672-JDA<br><br><br><br>**OPINION AND ORDER** |

This matter is before the Court on Plaintiff's motion for leave to file an amended complaint. [Doc. 48.] The Court grants the motion.

## BACKGROUND

### The Parties

Plaintiff William Finley, III is a resident and citizen of South Carolina. [Doc. 1 ¶ 2.] Defendant and its predecessors in interest[1] have designed, manufactured, marketed, leased, sold, and distributed the Bair Hugger Forced Air Warning System ("Bair Hugger") for more than 30 years, and it has been the subject of significant litigation. *See In re: Bair Hugger Forced Air Warning Devices Prods. Liab. Litig.* (*"Bair Hugger*"), 0:15-md-02666-JNE-DTS, Doc. 46-1 ¶ 2 (D. Minn. May 25, 2016). As described by the court in *Bair Hugger*,

> The Bair Hugger consists of a portable heater or blower connected by a flexible hose to a disposable blanket that is placed over (or in some cases under) surgical patients. The

[1] Defendant is a corporation organized and existing under the laws of Delaware, with its principal place of business in Minnesota. [Doc. 24 at 3.]

> Bair Hugger intakes air from the surrounding area . . . and passes it through the intake filter and internal air pathways of the machine and into an outlet hose. The warm air travels through the distal end hose, which does not have an air filter, and into the blanket, which has different compartments through which the warm air moves. The warm air exits the blanket through multiple holes over a patient's exposed skin, providing warmth to the patient during surgery.

*Id.* ¶ 3. On June 11, 2015, Plaintiff underwent a right total knee arthroplasty at the Patewood Memorial Hospital in Greenville, South Carolina, during which the Bair Hugger was used. [Doc. 1 ¶ 7.] Plaintiff claims that the Bair Hugger introduced contaminants into his open surgical wound, causing a periprosthetic joint infection. [*Id.* ¶ 8.]

**The MDL**

Because of the large number of claims from various plaintiffs alleging that they have suffered similar injuries from the Bair Hugger, the Judicial Panel on Multidistrict Litigation established a Multidistrict Litigation ("MDL") in the District of Minnesota such that all claims related to the Bair Hugger would be filed in the MDL for pretrial discovery and related proceedings. [Pretrial Order No. 5, MDL Doc. No. 37[2].] The MDL court has issued 27 pretrial orders, several of which are relevant here. Specifically, Pretrial Order No. 4 set deadlines of April 29, 2016, for filing and serving the Master Long Form and Master Short Form Complaints; July 29, 2016, for amending the Master Long Form and Master Short Form Complaints without leave of Court; and April 21, 2017, for filing motions to amend the Master Long Form and Master Short Form Complaints to include punitive damages claims. [Pretrial Order No. 4, MDL Doc. 27 ¶¶ 3, 7, 16; *see also* Pretrial

[2] Pretrial orders filed in *Bair Hugger* are referred to as "Pretrial Order No. __, MDL Doc. __" in the instant Order. Other citations to the MDL docket will appear as "MDL Doc. __." Citations to this Court's docket will appear as "Doc. __."

Order No. 17, MDL Doc. 175 ¶¶ 4, 11 (amended scheduling order including those same deadlines).] Pretrial Order No. 8 established the MDL's Master Long Form and Master Short Form Complaints and required that plaintiffs in the MDL initiate their individual cases by filing short form complaints based on the Master Short Form Complaint. [Pretrial Order No. 8, MDL Doc. 46 ¶ 4.]

Lead counsel for *Bair Hugger* MDL plaintiffs filed a First Amended Master Short Form Complaint and an amended Master Long Form Complaint on August 24, 2016. [Pretrial Order No. 17, MDL Doc. 175 ¶ 5; *see* MDL Docs. 96; 97.] The First Amended Master Short Form Complaint contains a series of fill-in-the-blank questions and standardized causes of action that plaintiffs can check off for inclusion. [*See* MDL Doc. 96.] For each particular cause of action plaintiffs check off in their short form complaints, those plaintiffs adopt that cause of action and the supporting factual background pled in the Master Long Form Complaint.[3] [Pretrial Order No. 8, MDL Doc. 46 ¶ 2.] Additionally, each individual plaintiff has "the express right to file and serve an Amended Complaint, upon the showing required by the relevant Federal Rules of Civil Procedure and any applicable court order . . . which more fully sets forth the facts specific to their case, the causes of action and allegations against [the defendants] and theories of liability alleged." [*Id.* ¶ 6.]

[3] This is a common practice in MDLs. *See, e.g.*, *Messina v. Ethicon, Inc.*, No. 6:20-cv-1170-PGB-LRH, 2021 WL 1329072, at *1 n.1 (M.D. Fla. Mar. 31, 2021) ("The Short Form Complaint is used to identify which causes of action alleged in the First Amended Master Long Form Complaint are adopted by the Plaintiff. Accordingly, one must look to the First Amended Master Long Form Complaint to appreciate each cause of action adopted by the Plaintiff.").

Plaintiff originally filed a short form complaint directly in the *Bair Hugger* MDL in the District of Minnesota on May 31, 2018. [Doc. 48-1.] Plaintiff checked the boxes for claims of negligence; strict liability; breach of express warranty; breach of implied warranty of merchantability under South Carolina law; violations of the Minnesota Prevention of Consumer Fraud Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota False Advertising Act; consumer fraud and unfair and deceptive trade practices under South Carolina state law; negligent misrepresentation; fraudulent misrepresentation; fraudulent concealment; and unjust enrichment. [*Id.*] He sought compensatory damages, pre- and post-judgment interest, statutory damages, court costs, attorneys' fees, disgorgement, and restitution. [*Id.* at 5.] Neither Plaintiff's short form complaint nor the Master Short Form or Master Long Form Complaints included punitive damages allegations. [Doc. 48-1; MDL Docs. 96 at 5; 97 at 50.]

The MDL court has directed three bellwether trial pools.[4] [*See* Doc. 13 at 2 n.1, 4.] Plaintiff's case was among the 34 bellwethers identified in December 2023. [MDL Doc. 2386 at 3, 5.] Twenty-eight of the 34 cases, including Plaintiff's, have been transferred to the districts in which they would have been filed in the absence of the direct filing order. [Doc. 13 at 6–9.]

[4] "A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015).

**Proceedings in This Court**

Plaintiff's case was transferred to the District of South Carolina on April 1, 2024 [*id.* at 7] and reassigned to the undersigned on May 31, 2024 [Doc. 44]. This Court entered a Scheduling Order on April 19, 2024, which included, as is relevant here, a deadline of July 18, 2024, to amend pleadings. [Doc. 30.] On May 23, 2024, the parties filed a Joint Rule 26 Discovery Plan and submitted a proposed Consent Amended Scheduling Order. [Doc. 42; *see* Doc. 41.] The parties disagreed about several issues, including the deadline for amending pleadings. [Doc. 42.] Concerning Plaintiff's filing of an amended complaint, the parties summarized their positions as follows:

> **Plaintiff['s] Position:**
>
> Plaintiff[] should be afforded the opportunity to amend [his] complaint to make it consistent with South Carolina law to avoid a likely Rule 12(c) motion to dismiss. While the MDL did create a deadline for amendments to short form complaints, the Master Complaint and the Short Form Complaint are both administrative in nature and were not intended to incorporate the nuances of each [state's] laws. Therefore, Plaintiff[] seek[s] leave to amend [his] complaint to make it comply with any specific requirements set forth under South Carolina [law] which relate to Plaintiff['s] underlying claims set forth in [his] Short Form Complaint. Plaintiff believes that the deadline proposed in the Amended Scheduling Order should be adopted by the Court.
>
> **Defendant['s] Position:**
>
> The deadline to further amend complaints, set by MDL Pretrial Order No. 17 and applicable to this case through MDL Pretrial Order No. 1, has passed. *In re Bair Hugger*, 0:15-md-2666, ECF No. 175, Pretrial Order No. 17, 4, 11 (D. Minn. Jan. 5, 2017) (setting the deadline for amending complaints); *Finley*, 6:24-cv-01672-RBH, ECF No. 5 at 3 (stating that all previous MDL Orders apply to this case); *see also Axline v. 3M Co.*, 8 F.4th 667, 676 (8th Cir. 2021) (affirming the MDL Court's decision to deny leave to amend a complaint to add claims under the Ohio Products Liability Act). This action was

> filed in August 2018 and Plaintiff had notice that he would need to show cause to amend his complaint. As such, no further amendments to the pleadings are allowed without filing a motion to amend and satisfying the requirements of Fed. R. Civ. P. 15 and 16.

[*Id.* at 4–5.] On May 24, 2024, the Court issued an Amended Scheduling Order that set a new deadline of August 16, 2024, for motions to amend pleadings. [Doc. 43.]

On August 16, 2024, Plaintiff filed the instant motion for leave to file an amended complaint and attached his proposed Amended Complaint. [Doc. 48.] The proposed Amended Complaint adds allegations specific to Plaintiff's surgeries and complications, adds allegations about Defendant's knowledge about the Bair Hugger and failure to warn, adds allegations related to fraudulent concealment, omits the previously included causes of action based on Minnesota law, requests punitive damages, includes allegations in support of that request, and provides a more specific prayer for relief. [*See generally* Doc. 48-4 ¶¶ 98–121, 174–88, 217–60.] On August 30, 2024, Defendant filed a response opposing the motion. [Doc. 49.] The motion is now ripe for review.

**DISCUSSION**

When a motion to amend the pleadings "is filed after the scheduling order deadline," as Defendant argues that this one is, "a two-step analysis is required." *Dilmar Oil Co., v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) (internal quotation marks omitted). First, a movant must "demonstrate to the court that it has a good cause for seeking modification of the scheduling deadline under Rule 16(b)." *Id.* (internal quotation marks omitted). "If the movant satisfies Rule 16(b)'s good cause standard, it must *then* pass the requirements for amendment under Rule 15(a)." *Id.* Rule 15(a) provides that a "court should freely give leave when justice so requires." Fed. R.

Civ. P. 15(a)(2). A motion to amend should be denied only under Rule 15(a) "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods, Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

**Rule 16 Analysis**

Initially, Defendant argues that "[t]he deadline for motions to amend passed on July 29, 2016, and passed specifically for motions to amend to include punitive damages claims on April 21, 2017." [Doc. 49 at 8 (citing MDL Doc. 175 at 2).] Accordingly, Defendant argues that Plaintiff must satisfy the good cause standard of Rule 16, and Defendant maintains that Plaintiff cannot meet that standard. [*Id.* at 8–10.] The Court does not agree that the Rule 16 standard applies.

The MDL Court required that "Plaintiffs filing cases directly into [the MDL case] shall file *Short Form Complaints* which are in an abbreviated form and which articulate as provided in the Short Form Complaint the injury, the dates, the home state, the plaintiff's date of birth, the basic theories of liability, and the suggested jurisdiction for remand." [Pretrial Order No. 8, MDL Doc. 46 ¶ 4 (emphasis added).] The two deadlines Defendant references do not pertain to amendments to individual plaintiffs' short form complaints. Rather, the July 29, 2016, deadline was for amending "the *Master* Long Form and *Master* Short Form Complaints without leave of Court." [Pretrial Order No. 17, MDL Doc. 175 ¶ 4 (emphasis added).] And, the April 21, 2017, deadline was for "[m]otions to amend the Amended *Master* Short Form and *Master* Long Form Complaints to include punitive

damages claims."[5] [*Id.* ¶ 11 (emphasis added).] The only deadline applicable to amending the Complaint in this case is the August 16, 2024, deadline set by this Court [Doc. 43].[6] Because Plaintiff filed his motion for leave to amend before that deadline passed, Rule 16 does not apply.

**Rule 15 Analysis**

As noted, a motion to amend should be denied under Rule 15 only "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson*, 785 F.2d at 509. Defendant does not argue that Plaintiff has acted with bad faith, but it contends that granting leave would be futile and that Defendant would be unduly prejudiced. [Doc. 49 at 10–16.] The Court disagrees.

***Futility***

Regarding futility, Defendant argues that allowing the proposed amendment would be futile because the allegations in the proposed amended pleading are too conclusory

[5] As Plaintiff explains, "Leadership within the MDL [had] previously attempted to amend the *Master* Complaint to add punitive damages solely under Minnesota law." [Doc. 48-2 at 2 (emphasis added); *see* MDL Doc. 629 at 2.] In other words, the leadership within the MDL sought "to amend the Master Long Form and Master Short Form Complaints to add claims for punitive damages to each respective Complaint in the 2,619 active federal cases consolidated in the MDL." [MDL Doc. 629 at 2.]

[6] Defendant argues that the MDL court, considering a motion to amend in another bellwether case, concluded that the July 29, 2016, deadline applies to plaintiffs' motions to amend their individual complaints. [Doc. 49 at 8, 15–16 (citing *Trombley v. 3M Co.*, No. 0:16-cv-04159-JNE-DTS, Doc. 26 at 2–3 (D. Minn. Jan. 3, 2019)).] That court, however, did not address the language of the July 29, 2016, deadline, and, unlike in this case, the court in *Trombley* did not have its own scheduling order. This Court finds more persuasive the analysis of the court in *Robinson v. 3M Co.*, No. 8:24-cv-00828-WFJ-AAS (M.D. Fla. July 22, 2024), which did address the relevant language and concluded that the deadline in question does not apply to motions to amend individual complaints. *See id.*

to entitle Plaintiff to punitive damages under South Carolina law.[7] [*Id.* at 10–12.] The Court disagrees.

"The law of South Carolina permits a jury to award punitive damages to punish, deter, and vindicate the rights of the plaintiff whenever the conduct of the defendant is willful, wanton or reckless." *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 100 (4th Cir. 1991). "Conduct is wilful, wanton, or reckless when committed with a deliberate intention and under such circumstances that a person of ordinary prudence would be conscious of it as a reckless disregard of another's rights." *Hoskins v. King*, 676 F. Supp. 2d 441, 449 (D.S.C. 2009). The Court concludes that the proposed Amended Complaint alleges facts sufficient to support a punitive damages award.

Plaintiff alleges in the proposed Amended Complaint that "[n]o later than the mid-1990s, Defendant received reports that various clinicians had concerns that the Bair Hugger generated particles, and that those particles were capable of carrying bacteria and causing infections in surgical patients"; that "[s]ince 2003, Defendant has been aware of various research papers and peer reviewed studies confirming Bair Hugger machines were routinely contaminated with bacteria"; and that "[d]espite [its] knowledge of these studies, Defendant admits that no responsive study or investigation was ever done." [Doc. 48-3 ¶¶ 230, 231, 234.] Plaintiff further alleges that, as early as 2009, Defendant reviewed a particular study that showed "that the internal surfaces of Bair Hugger blowers were contaminated with pathogens"; "that Bair Hugger blowers emit a multitude of

---

[7] Defendant does not concede that South Carolina law applies, but it observes that Plaintiff's motion presents punitive damages under South Carolina law and thus Defendant assumes, for purposes of opposing the motion, that South Carolina law applies. [Doc. 49 at 11.]

particles into the surgical field"; and that those findings were corroborated by another article published one year later. [*Id.* ¶¶ 235, 236.] Plaintiff also alleges that in 2011, an article published "found that the heat exhausted from the Bair Hugger mobilizes unsterile air from the floor of the operating room to the surgical site"; that "a statistical analysis on joint infection rates when the Bair Hugger was in use" was 3.8 times the rate as "compared to when the device was replaced with an alternative air-free warming technology"; and yet Defendant "publicly derogated the study instead of investigating its merits." [*Id.* ¶¶ 237, 238.] Plaintiff alleges that studies in 2011 and 2012 yielded similar results. [*Id.* ¶ 239.] Plaintiff also alleges that a 2013 published study "showed that 96% of Bair Huggers were emitting significant levels of internally generated airborne contaminants out of the hose" and that "[a]lthough the researchers recommended using HEPA filtration or redesigning the device to allow for internal cleaning, Defendant ignored these recommendations even in the face of subsequent literature recommending the use of alternative patient-warming devices." [*Id.* ¶ 240 (footnote omitted).]

Plaintiff alleges that despite this awareness, Defendant has not warned that the Bair Hugger may increase the amount of particulates over the sterile field and, indeed, that Defendant in fact "made affirmative statements that created a false impression that Bair Hugger forced air warming devices were safe, effective, and appropriate for use in operating rooms, during all orthopedic surgeries, including Plaintiff's right total knee arthroplasty." [*Id.* ¶ 253; *see, e.g., id.* ¶¶ 50–53, 56–57, 63, 65–74, 76, 79, 81–82, 98–121.] Plaintiff alleges that "[b]ecause of Defendant's actions and inactions, Plaintiff was injured due to the use of the Bair Hugger, which has caused and will continue to cause bacteria to enter the surgical site" and that the resulting "infections have caused [Plaintiff]

to undergo surgical debridement, premature prosthetic replacement, extended hospital stays, multiple surgeries and high dose intravenous antibiotic treatment." [*Id.* ¶ 20; *see id.* ¶¶ 31–36, 40.]

The Court concludes, that, taken as true, Plaintiff's allegations demonstrate that Defendant was aware that the Bair Hugger significantly increased the risk of infections to surgical patients and it failed to address the issue, by warning or otherwise. The facts could support a reasonable conclusion that Defendant's conduct was "wilful, wanton, or reckless" because it was "committed with a deliberate intention and under such circumstances that a person of ordinary prudence would be conscious of it as a reckless disregard of another's rights." *Hoskins*, 676 F. Supp. 2d at 449. Accordingly, Plaintiff's proposed amendment would not be futile.

***Undue Prejudice***

In arguing that the amendment would unduly prejudice Defendant, Defendant contends that "[t]he aims of multi-district litigation are to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.'" [Doc. 49 at 13 (quoting *In re Lipitor*, 226 F. Supp. 3d 557, 583 (D.S.C. 2017)).] Defendant argues that allowing amendment would "frustrate[] this core purpose" by "threaten[ing] to undo significant work done in the MDL court by opening the door to general discovery disputes in this Court that should be left to the MDL court." [*Id.* at 14.]

The Court disagrees. The Court notes that the *Jones* court, which is presiding over six of the *Bair Hugger* bellwether cases, appears to have allowed discovery related to punitive damages. *Jones v. 3M Co.*, No. 0:23-cv-1425-JNE-DTS, Doc. 34 at 2 (D. Minn.

Mar. 7, 2024) (providing that the court would not hear motions to dismiss under Rule 12(b)(6) or motions for judgment on the pleadings under Rule 12(c) but would allow both parties to "fully brief and argue issues related to . . . punitive damages based upon a fully developed factual record after discovery"). The Court sees no reason why allowing such discovery would undermine efficiency. Although "MDLs bring useful efficiency and centralization to mass tort litigation," they "are not designed to run in lockstep—to the contrary, one purpose of bellwethers is to test different litigation theories and strategies," and, "at the end of the day," the plaintiff is bound by the result. *Robinson v. 3M Co.*, No. 8:24-cv-00828-WFJ-AAS, Doc. 49 at 16 (M.D. Fla. July 22, 2024) (citing 4 *Newberg and Rubenstein on Class Actions* § 11:12 (6th ed. 2024)). The Court therefore concludes that allowing Plaintiff's amendment would not unduly prejudice Defendant.[8]

---

[8] Defendant also maintains that Plaintiff has not shown justification for his undue delay in seeking to amend his short form complaint. [Doc. 49 at 12–13.] Defendant maintains that Plaintiff has waited six years since filing his short form complaint and more than eight months since his case was selected as a bellwether, "despite knowing many of the allegations contained in the Amended Complaint at the outset of this case." [*Id.* at 13.] As noted, however, requesting punitive damages was not an option for Plaintiff before this case was transferred to this Court, and Defendant has not pointed to any prejudice from the few months that Plaintiff delayed in filing his motion once he was able. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("Delay alone is not a sufficient reason to deny a motion to amend.").

Defendant further argues that Plaintiff's proposed amended complaint includes some allegations that are "unnecessary" and contends that "Plaintiff should not be permitted to re-write the MDL court-approved Master Long Form Complaint to include such unnecessary allegations under the guise of amending his short-form complaint." [Doc. 49 at 12 n.3.] Defendant does not claim prejudice from these allegations, however, or otherwise explain why the allegations would be grounds for denying the motion to amend.

## CONCLUSION

Based on the above, Plaintiff's motion to amend the Complaint [Doc. 48] is GRANTED. Plaintiff is directed to file his Amended Complaint by December 13, 2024.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

December 3, 2024
Greenville, South Carolina