**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Best*, 25-cv-1919<br>*Brady*, 25-cv-1808 | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

Plaintiffs Marcia Best and Brenda Brady ("Plaintiffs") do not dispute that their lawsuits were filed outside of the applicable Mississippi statute of limitations. Instead, they argue that the doctrine of fraudulent concealment should toll the limitations period and save their claims, and they seek to amend their complaints to add specific allegations of fraudulent concealment. Plaintiffs both filed a Proposed Amended Complaint ("PAC") along with their Motions to Amend. In each case, the PACs demonstrate that amendment is futile for two reasons. First, the PACs fail to adequately plead fraudulent concealment under Mississippi law. Second, even if fraudulent concealment were pled as required, this Court has previously concluded that accrual of the applicable statute of limitation is tolled only until the onset of infection when a

plaintiff is on inquiry notice to discover their claims.[1] Because the PACs plead that Plaintiffs were diagnosed with an infection more than three years before filing suit, amendment is futile, and their claims are untimely as a matter of law.

Accordingly, Defendants 3M Company and Arizant Healthcare Inc.'s (together, "3M") Motion for Judgment on the Pleadings ("MJOP") should be granted, and Plaintiffs' individual Motions for Leave to Amend Complaint (hereinafter "Motions to Amend") should be denied.

## ARGUMENT

### I. 3M's MJOP Is Neither Procedurally Improper Nor Premature

Plaintiffs assert that the filing of 3M's MJOP is improper because it "bypasses the Court-ordered sequencing of discovery and motion practice [and] undermines the structure established by the governing PTOs." (Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3315, hereinafter "Opposition" or "Opp." at 4.) This argument is unavailing. While Plaintiffs note that PTO 1 stays individual discovery, this has no bearing on the MJOP, which is decided solely on the pleadings and requires no discovery. PTO 4 and 8 are equally irrelevant. PTO 4 set a schedule of deadlines for pleadings and dispositive motions in 2016, before any Plaintiffs filed their Complaints, and PTO 8 refers

[1] *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

back to those deadlines as they relate to any *Rule 12(b)(6)* motions directed at the master pleadings.[2]

Regarding the dispositive motion schedule in PTO 22, Plaintiffs misinterpret the order. PTO 22 sets deadlines for general causation summary judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, until 3M began filing Rule 12(c) motions directed at facially untimely claims, no Plaintiffs have previously advocated for this interpretation of PTO 22, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875; (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, their cases "have no scheduling orders," (Opp. at 6), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1.) The good

---

[2] Even if the Court finds that Pretrial Order No. 8 stayed all motion practice (including motions under Rule 12(c)) directed at individual complaints, the order provided that motion practice could proceed "upon leave of the Court." (Pretrial Order No. 8, MDL Dkt. 46 at 2.)

cause standard under Local Rule 16.3 is consistent with the good cause standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *See Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP and similar motions, because the MDL inventory is littered with cases that are facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferor courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

## II. Plaintiffs' Request for Equal Treatment with Remand Plaintiffs is Unpersuasive.

Plaintiffs' argument that Plaintiffs in "remanded" cases have the unfettered right to amend their pleadings and conduct discovery is equally unpersuasive. (*See* Opp. at 5-7). For one thing, the Wave 3 cases being worked up in the MDL are not "remanded"—they are not even transferred. Next, there would have been no need for Plaintiffs' leadership to ask this Court to be allowed to amend in the pretrial conferences to the first Wave 3 scheduling

order if they believed they could amend without leave. Although PTO 8 does provide that "[a]ll Plaintiffs have the express right to file and serve an Amended Complaint," it does so only "upon the showing required by the relevant Federal Rules of Civil Procedure," (PTO 8, MDL Dkt. 46, at 2-3), which includes the requirement in Rule 15(a)(2) that Plaintiffs must seek leave of the court to file an Amended Complaint where amending as a matter of course under Rule 15(a)(1) is not available. Fed. R. Civ. P. 15. Moreover, by filing their Motions to Amend and PACs, Plaintiffs have nullified any argument that adjudicating the MJOP unfairly deprives them of an opportunity to seek leave to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

## III. Plaintiffs' Argument for Judicial Efficiency Does Not Justify Denial of 3M's MJOP.

Plaintiffs' purported concern about judicial efficiency—*i.e.*, that if the Court allows the MJOP to proceed, "the floodgates of motion practice would open" (Opp. at 7)—is a strawman that lacks legal foundation and does not justify denying 3M the relief to which it is legally entitled. Plaintiffs elected to file hundreds (if not thousands) of cases that are facially time-barred, and plaintiffs continue to pursue those meritless cases with impunity, unfairly

burdening both the Court and Defendants. Judicial efficiency is best supported by litigants voluntarily dismissing cases that are facially time-barred (or, even better, never filing them in the first place). Until that approach is adopted, Defendants may file good-faith motions that will efficiently dispose of cases that have no chance of success.

If Plaintiffs' counsel will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Defendants have little choice but to initiate motion practice.

## IV. Plaintiffs Should Be Denied Leave to Amend Because the Proposed Amendments Are Futile

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise

meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Plaintiffs claim that "Defendants cannot argue futility" because "the proposed amended complaint contains many more facts and details than the Master Complaint." Memorandum in Support of Plaintiff's Motion for Leave to Amend Complaint, No. 25-cv-1919, Dkt. 18 at 8; Memorandum in Support of Plaintiff's Motion for Leave to Amend Complaint, No. 25-cv-1808, Dkt. 17 at 8. But it is not the quantity of facts or details that is relevant; it is the specificity of the allegations that matters.

Here, Plaintiffs' PACs are futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to toll the statute of limitations under the theory of fraudulent concealment; and (2) even if Plaintiffs could take advantage of tolling under these doctrines, any tolling would cease upon the date Plaintiff was diagnosed with an infection. Because the PACs clearly show that Plaintiffs were diagnosed with an infection more than three years before filing suit, the amendments are futile.[3]

---

[3] Plaintiffs assert that they entered into a tolling agreement with Defendants as to these claims, but as they admit, "It was not until *after the statute of limitations had run* that Plaintiff . . . retained counsel, who obtained the medical records confirming the Bair Hugger was used . . . [and] *entered into a tolling agreement with Defendants*." Best Proposed Amended Complaint, Dkt. 19-1 at ¶ 40 (emphasis added). Therefore, the tolling agreement does not affect the statute-of-limitations analysis because by the time it was entered, the statute of limitations had already expired.

### A. Plaintiffs Fail to Adequately Plead Fraudulent Concealment.

1. Plaintiffs fail to plead with requisite particularity.

A plaintiff seeking to toll the statute of limitations on the basis of fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011); Fed. R. Civ. Pro. 9(b). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880-81 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); *see also 469 Cnty. Rd. Baldwyn Props., LLC v. Manchester Anika, LLC*, No. 1:18-CV-121-SA-DAS, 2019 WL 3806376, at *3 (N.D. Miss. Aug. 13, 2019) (Plaintiffs "must state with particularity the circumstances constituting fraud," and they must state "the who, what, when, where, and how . . . *before* access to the discovery process is granted.") (internal citations omitted); *Stringer v. Remington Arms Co., L.L.C.,* 52 F.4th 660, 662 (5th Cir. 2022) ("Plaintiffs fail to meet Rule 9(b)'s requirements . . . [when] [t]hey say merely that Remington 'ignored' notice of a safety related problem. Our court has previously disallowed the practice of basing claims of fraud on 'speculation and conclusory allegations,' even when the facts pleaded in a complaint are

'peculiarly within the opposing party's knowledge.'") (internal citations omitted).

Like *Stringer*, the statements proffered by Plaintiffs here are no more than speculative, conclusory allegations that do not rise to the level of fraudulent concealment. Instead, the amendments offered under "Fraudulent Concealment" merely assert that 3M was aware of the alleged risks relating to the Bair Hugger identified in the Complaint, failed to disclose those risks to physicians, and actively concealed them. (*See* Best Proposed Amended Complaint, No. 25-cv-1919, Dkt. 19-1 at ¶¶ 35-43, 119-165; Brady Proposed Amended Complaint, No. 25-cv-1808, Dkt. 18-1 at ¶¶ 35-43, 119-165). But these allegations do not establish the how, when, and in what manner 3M allegedly committed fraud against Plaintiffs or their physicians *specifically*. Indeed, the allegations in the PACs are not specific to Plaintiffs or their circumstances at all. Like the allegations this Court found insufficient to demonstrate fraudulent concealment in *Partlow*, here "Plaintiffs fail to allege fraudulent concealment by pleading only that Defendants failed to disclose information about dangers associated with the Bair Hugger," and they fail to allege that any specific misrepresentations induced reliance by Plaintiffs or their doctors, or otherwise "caused [their] delay in filing suit." *Partlow*, No. 16-cv-2144, Dkt. 29, p. 5.

2. Plaintiffs fail to allege an affirmative act of concealment by 3M.

"Where the parties do not stand in a confidential or fiduciary relationship with one another, an affirmative act of concealment is necessary." *Poe v. Summers*, 11 So. 3d 129, 134 (Miss. Ct. App. 2009); *see also Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 264 (Miss. 2009). Plaintiffs do not allege that 3M was in a fiduciary relationship with Plaintiffs, nor can they. Consequently, Plaintiffs must allege that 3M engaged in affirmative acts of concealment toward them. *See, e.g., Patel v. Hill-Rom Co.*, 194 So. 3d 898, 903 (Miss. Ct. App. 2016). This requirement "refers not to proof of the act that gives rise to the claim but rather to a *subsequent* affirmative act of concealment." *Hull v. Wyeth,* No. 3:05-CV-177-TSL-MTP, 2012 WL 4857589, at *3 (S.D. Miss. Oct. 11, 2012) (emphasis in original) (citing *Liddell v. First Family Financial Servs., Inc.,* 146 Fed. Appx. 748, 751, 2005 WL 2044555, 2 (5th Cir. 2005) and highlighting that Mississippi's fraudulent concealment doctrine requires that affirmative acts of concealment must occur "after the transactions at issue").

Here, the PACs fail to allege, must less with particularity, any acts of concealment occurring after Plaintiffs' alleged injuries. While the PACs allege that 3M failed to disclose certain information or purposely withheld it from the general public, they do not include factual allegations sufficient to establish that 3M affirmatively concealed Plaintiffs' injuries or prevented Plaintiffs from discovering a cause of action. *See Channel v. Loyacono*, 954 So. 2d 415,

423-424 (Miss. 2007) ("While [plaintiffs] do make allegations of fraudulent and negligent acts committed by [defendants], the plaintiffs make no offering of any affirmative act designed to conceal ***a cause of action***.") (emphasis added).

Simply put, Plaintiffs fail to adequately explain how 3M concealed their injuries or how any purported fraudulent misrepresentation prevented them from timely filing their Complaints. *See Robinson v. Cobb,* 763 So. 2d 883, 887 (Miss. 2000) ("[T]here must be shown some act or conduct of an affirmative nature designed to prevent and which does ***prevent discovery of the claim***.") (emphasis added). The only allegation that comes close to providing facts relevant to the timing of Plaintiffs' filing of their lawsuits speaks to Plaintiffs' lack of knowledge—not to any conduct by 3M. (*See, e.g.*, Brady Proposed Amended Complaint, Dkt. 18-1 at ¶ 40 ("It was not until after the statute of limitations had run that Plaintiff first learned the Bair Hugger was capable of causing an infection when Plaintiff saw content indicating that the Bair Hugger was capable of causing infections during orthopedic surgeries. Upon learning this, Plaintiff promptly retained counsel . . .").) This statement describes when Plaintiff learned of a possible connection between the Bair Hugger and her infection—not when and how 3M allegedly concealed from her a cause of action. And this Court has already recognized that "[m]ere failure to warn of a product's risk is not enough to establish fraudulent concealment." *Partlow v. 3M Company, et al.*, No. 16-cv-2144, Dkt. 29, p. 4 (Jan. 7, 2019). This

is consistent with Mississippi law. *See Sanderson Farms Inc. v. Ballard*, 917 So. 2d 783, 790 (Miss. 2005) (fraudulent concealment claims fail because plaintiffs do not assert any details of how defendant affirmatively concealed information, and "[m]erely alleging that the other side has complete control of the [information] simply will not suffice").

3. Plaintiffs fail to show they exercised due diligence.

Additionally, Mississippi law requires Plaintiffs to plead and prove that they exercised due diligence to investigate their claims. *See, e.g.*, *Robinson*, 763 So. 2d at 888 (Plaintiffs "must show that even though they acted with due diligence in attempting to discover their cause of action, they were unable to do so."). Plaintiffs here state that they exercised due diligence upon discovery of their infections by "review[ing] available medical records and inquir[ing] with the medical providers associated with Plaintiff's surgeries and infection treatment as to potential causes of the infection." (*See* Brady Proposed Amended Complaint, Dkt. 18-1 at ¶ 38; Best Proposed Amended Complaint, Dkt. 19-1 at ¶ 38.) Yet Plaintiffs' own allegations confirm a lack of due diligence, for they acknowledge that only after the statute of limitations had run did they retain counsel, "who obtained the medical records confirming the Bair Hugger was used in Plaintiff's joint replacement surgery." (*See* Brady Proposed Amended Complaint, Dkt. 18-1 at ¶ 40; Best Proposed Amended Complaint, Dkt. 19-1 at ¶ 38.) Plaintiffs could have requested their complete

medical records at any time, which could have given them the information they needed. *See, e.g.*, *Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98, pp. 6-7 (Sept. 12, 2025). Ignorance is not sufficient to establish fraudulent concealment. *See Trustmark Nat. Bank v. Meador*, 81 So. 3d 1112, 1120 (Miss. 2012) (fraudulent concealment does not apply where, instead of showing conduct that exhibits due diligence, plaintiff simply states "he was unable to discover any information"). And it's hard to see how one attempt to review medical records is sufficient due diligence over the span of the more than seven years between discovery of an infection and filing a lawsuit.

By Plaintiffs' own allegations, they were on notice of the need to investigate many years before filing their lawsuits. Best alleges that she was treated on December 12, 2017, for an infection related to her November 14, 2017, surgery. (*See* Best Proposed Amended Complaint, Dkt. 19-1 at ¶¶ 31-34.) Best waited until April 30, 2025, to file this lawsuit. Although Best states that she "saw content indicating that the Bair Hugger was capable of causing infections during orthopedic surgeries," (*id.* at ¶ 40), she fails to allege what steps, if any, she took between her infection diagnosis in December 2017 and the filing of her lawsuit in April 2025 to inquire into the cause of her injuries.

Brady alleges that she was treated in December 2016 and January 2017 for an infection related to her December 2016 surgery. (*See* Brady Proposed Amended Complaint, Dkt. 18-1 at ¶¶ 31-34.) Brady waited until April 29, 2025,

to file this lawsuit. Although Brady alleges that she "saw content indicating that the Bair Hugger was capable of causing infections during orthopedic surgeries," (*id.* at ¶ 40), she fails to allege what steps, if any, she took between her infection diagnosis in December 2016 and the filing of her lawsuit in April 2025 to inquire into the cause of her injuries.

Since Plaintiffs do not plausibly allege that they acted with due diligence, the fraudulent concealment doctrine does not save their claims. *See Brown v. McKee*, 242 So. 3d 121, 129 (Miss. 2018) (the party claiming fraudulent concealment "does not need discovery . . . to show what efforts he took to discover [defendants'] alleged fraud.").

4. <u>This Court can determine as a matter of law that Plaintiffs fail to adequately plead fraudulent concealment</u>.

Plaintiffs incorrectly assert that "all questions related to Plaintiffs' allegations of fraudulent concealment are questions of fact that must be determined by the jury." (Opp. at 10.) While this statement accurately quotes from *Robinson*, it is taken out of context and misapplied as a general directive that fraudulent concealment cannot be resolved as a matter of law. Mississippi case law abounds with decisions that reach the opposite conclusion, including by the Supreme Court of Mississippi. *See, e.g.*, *Sanderson Farms*, 917 So. 2d at 790 (reversing trial court's denial of motions to dismiss and dismissing plaintiff's amended complaints as time-barred because the fraudulent concealment doctrine did not apply); *Stephens v. Equitable Life Assur. Soc'y of*

*U.S.*, 850 So. 2d 78, 85 (Miss. 2003) (affirming lower court's dismissal of claims as barred by the statute of limitations because the fraudulent concealment doctrine did not apply). Thus, given that at least two subsequent state supreme court decisions ruled that *dismissal as a matter of law* was the proper outcome for fraudulent concealment allegations, Plaintiffs' insistence that the "Court need not look any further tha[n] the Mississippi Supreme Court's analysis in *Robinson v. Cobb*" to see that all questions related to fraudulent concealment must be determined by a jury is just plain wrong.

5. <u>The Bair Hugger MDL provided sufficient notice to Plaintiffs of a possible cause of action</u>.

Finally, applying the fraudulent concealment doctrine would also be improper because this MDL was in full swing by the time Plaintiffs were diagnosed with and treated for their infections. Best was first treated for an infection on December 12, 2017. (*See* Best Proposed Amended Complaint, Dkt. 19-1 at ¶ 32.) Brady was treated for an infection on January 6, 2017. (*See* Brady Proposed Amended Complaint, Dkt. 18-1 at ¶ 32.) Information about the Bair Hugger system and its alleged risks was available in the public domain due to the existence of the MDL, meaning that a reasonably diligent plaintiff could have discovered her cause of action, and 3M effectively had no ability to fraudulently conceal claims from any plaintiff. *See, e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar

complaints against defendants in a "highly publicized MDL"), appeal filed, No. 25-1258 (1st. Cir. Mar. 26, 2025).

As a result, each of the Plaintiffs had "information regarding the claim" readily available to them but "failed to take action," thus their claims cannot be tolled under the fraudulent concealment exception. *Alexander v. Wyeth,* 897 F. Supp. 2d 489, 494 (S.D. Miss. 2012) (quoting *Trustmark Nat. Bank*, 81 So.3d at 1120).

### B. Any Alleged Tolling of the Statute of Limitations Ends When Plaintiffs Were First Diagnosed with a PJI.

Under Mississippi law, the fraudulent concealment doctrine tolls the statute of limitations only until the alleged fraud should have been discovered through reasonable diligence. *See Patel v. Hill-Rom Co., Inc.,* 194 So. 3d 898, 902–03 (Miss. Ct. App. 2016) ("A defendant's fraudulent concealment of a cause of action effectively tolls the beginning of a statute of limitations until 'the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.'" (quoting Miss. Code Ann. § 15-1-67 (Rev. 2012). Likewise, the discovery rule for personal injury claims only tolls the three-year statute of limitations applicable to Plaintiff's claims until "discovery of the injury, *not discovery of the injury and its cause*. Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury." *W. World Ins. Grp. v. KC Welding, LLC*, 372 So. 3d 464, 467–68 (Miss. 2023) (internal quotations omitted).

In short, the clock starts once Plaintiffs were aware of their injuries. As soon as Plaintiffs knew of their infections in 2017, Plaintiffs were able to discover potential claims through reasonable diligence, yet each waited more than seven years to file their Complaint. Neither the original Complaints nor the PACs explain with specificity how any alleged fraudulent concealment prevented Plaintiffs from timely filing their Complaints. As this Court has previously concluded, at any point after Plaintiffs were diagnosed with a PJI, Plaintiffs could have requested and reviewed their medical records and could have sought medical and legal assistance to discover their alleged causes of action. *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98, pp. 6-7 (Sept. 12, 2025) ("At any time after he was diagnosed with a periprosthetic joint infection in March 2012, [plaintiff] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries."); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103, p. 8 (Sept. 12, 2025) ("The prescription period did not await review of [Plaintiff's] medical records to start running."); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136, pp. 7-8 (Sept. 12, 2025) (similar). Plaintiffs have not plausibly alleged due diligence, and this Court has already concluded that the onset of infection is sufficient to put similarly situated plaintiffs asserting similar claims against

3M on inquiry notice of their claims, triggering the statute of limitations. For these reasons, any tolling of the statute of limitations—whether tolled under a discovery rule or the doctrine of fraudulent concealment—ended when Plaintiffs were first diagnosed with an infection.

Here, Plaintiffs' claims are time-barred even if the Court uses the PACs as the operative pleading:

- **Best –** Best's PAC demonstrates that her index surgery took place on November 14, 2017, and that she was first diagnosed with an infection on December 12, 2017, when she underwent irrigation and debridement. (*See* Best Proposed Amended Complaint, Dkt. 19-1 at ¶¶ 31-34). Best, however, did not file her lawsuit until April 30, 2025—more than seven years after her infection diagnosis put her on notice. (*See Best v. 3M Company et al.*, No. 25-cv-1919, Dkt. 1.)
- **Brady –** Brady's PAC confirms that her index surgery took place on December 15, 2016, and that she was first diagnosed with an infection on January 6, 2017, when she underwent irrigation and debridement with polyethylene exchange. (*See* Brady Proposed Amended Complaint, Dkt. 18-1 at ¶¶ 31-34). Brady, however, did not file her lawsuit until April 29, 2025—more than eight years after her infection diagnosis put her on notice. (*See Brady v. 3M Company et al.*, No. 25-cv-1808, Dkt. 1.)

Because each of the PACs clearly shows that Plaintiffs were diagnosed with an infection more than seven years before filing suit, their claims are time-barred, and the proposed amendments are futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted and Plaintiffs' Motions for Leave to Amend should be denied.

Respectfully submitted,

Date: February 12, 2026

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center 90
South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952) Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***